UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PORTSIDE GROWTH AND OPPORTUNITY
FUND,

                      Plaintiff,

      -against-

GIGABEAM CORPORATION,

                      Defendant

Case No. 07 Civ. 6990 (NRB)

DECLARATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

      JEFFREY C. SMITH swears under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

      1.     I am the portfolio manager for plaintiff Portside Growth and Opportunity Fund ("Portside"). I submit this affidavit in support of Portside's motion for summary judgment against defendant GigaBeam Corporation ("GigaBeam"). My statements regarding Portside are based on personal knowledge. My statements regarding GigaBeam are based on the documents that it has filed with the Securities and Exchange Commission ("SEC") and the other documents annexed to this Declaration.

GigaBeam's Sale of Preferred Stock

      2.     Defendant GigaBeam is a Delaware corporation with its principal place of business in Virginia. According to its SEC filings, GigaBeam was incorporated in January 2004 and became a public company in October 2004. GigaBeam sells wireless telecommunications equipment. Its shares of common stock trade on Nasdaq under the ticker symbol "GGBM."

      3.     In November 2005, GigaBeam adopted a Certificate of Designation of Preferences, Rights and Limitations of Series B Convertible Preferred Stock (the "Certificate of Designation"). I have annexed as Exhibit A a copy of the Certificate of Designation, as filed by

554541-1

GigaBeam with the SEC. The Certificate of Designation provided, among other things, that Gigabeam's Series B Convertible Preferred Stock (the "Preferred Stock") could be converted into shares of common stock based upon a stated value of $1,000 for each share of Preferred Stock and an initial value of $7.61 for each share of common stock, subject to adjustment. According to its public filings, GigaBeam raised approximately $18 million through a private placement of Preferred Stock.

4.   At the same time, GigaBeam entered into a Registration Rights Agreement (the "Registration Rights Agreement") under which it became obligated to file a registration statement with the SEC for the shares of common stock into which the Preferred Stock could be converted. I have annexed as Exhibit B a copy of the Registration Rights Agreement as filed by GigaBeam with the SEC. This registration statement is referred to as the "Conversion Shares Registration Statement." Under the Registration Rights Agreement, GigaBeam became obligated to file the Conversion Shares Registration Statement within 30 days of the closing of the sale of the Preferred Stock. Furthermore, the Registration Rights Agreement expressly set forth GigaBeam's obligation to maintain the effectiveness of the Conversion Shares Registration Statement:

> . . . the Company shall use its best efforts to cause a Registration Statement to be declared effective under the Securities Act as promptly as possible after the filing thereof, but in any event prior to the applicable Effectiveness Date, and shall use its best efforts to keep such Registration Statement continuously effective under the Securities Act until all Registrable Securities covered by such Registration Statement have been sold or may be sold without volume restrictions pursuant to Rule 144(k) as determined by the counsel to the Company pursuant to a written opinion letter to such effect, addressed and acceptable to the Company's transfer agent and the affected Holders (the "Effectiveness Period").

(Ex. B § 2(a))

5.   The "Effectiveness Period" under the Registration Rights Agreement thus extends "until all Registrable Securities covered by such Registration Statement have been sold or may be sold without volume restriction pursuant to Rule 144(k) . . . ." (Ex. B § 2(a))  I am advised that SEC Rule 144(k) permits the sale, without restriction, of securities that are unregistered if they have been held for at least two years.  17 C.F.R. § 230.144(k).

Portside's Purchase of Preferred Stock

6.   Portside is a private investment fund, formed as a Cayman Islands corporation, that often invests in private placements.  The securities purchased by Portside in private placements often include convertible securities, including convertible preferred stock, that are convertible, at Portside's option, into the issuer's common stock.  In June 2006, Portside acquired 342 shares of Preferred Stock from Omicron Master Trust ("Omicron"), an original investor in GigaBeam's private placement of the Preferred Stock.  I have annexed a copy of the Assignment Agreement (redacted to exclude confidential information unrelated to GigaBeam) as Exhibit C.  Omicron provided notice to GigaBeam of the transfer, with instructions to issue a new certificate in Portside's name.  I have annexed as Exhibit D a copy of the notice sent by Omicron.  GigaBeam later issued this certificate, a copy of which is annexed as Exhibit E, to Portside.  The Conversion Shares Registration Statement was effective when Portside made its purchase.

7.   Prior to this litigation, GigaBeam had never disputed the validity of the transfer of Portside's shares of Preferred Stock from Omicron.  To the contrary, in addition to issuing a new certificate for the shares in Portside's name, since June 2006 Portside has received notices from GigaBeam as a holder of Preferred Stock.  Moreover, on October 4, 2006, GigaBeam amended the Conversion Shares Registration Statement to list Portside as a "Selling Stockholder."  I have annexed as Exhibit F a copy of the relevant pages from GigaBeam's filing with the SEC.

3

554541-1

Portside's Redemption of Its Preferred Stock

8. The Certificate of Designation granted Portside the right to require GigaBeam to redeem Portside's shares of Preferred Stock upon the occurrence of a "Triggering Event." (Ex. A § 9(a)) One such "Triggering Event" would occur if GigaBeam failed to maintain the effectiveness of the Conversion Shares Registration Statement:

> "Triggering Event" means . . . if, during the Effectiveness Period, the effectiveness of the Conversion Shares Registration Statement lapses for any reason for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period . . . ."

(Ex. A § 9(a)(ii))

9. By letter dated April 25, 2007, GigaBeam notified Portside, as a holder of Preferred Stock, that the SEC had suspended the effectiveness of the Conversion Shares Registration Statement. I have annexed as Exhibit G a copy of the notice that we received. The effectiveness of the Conversion Shares Registration Statement was suspended for more than sixty days after April 25, 2007.

10. On July 10, 2007, Portside delivered a redemption notice to GigaBeam (the "Initial Redemption Notice"), demanding the delivery of 166,532 shares of Common Stock. A copy of the Initial Redemption Notice is annexed as Exhibit H. On July 18, 2007, Portside corrected a computational error in its notice and demanded 222,043 shares, an increase of 55,411 shares (the "Amended Redemption Notice"). A copy of the Amended Redemption Notice is annexed as Exhibit I. At the time of each redemption notice, the Conversion Shares Registration Statement remained suspended. Accordingly, the criterion for a "Triggering Event," namely that the Conversion Shares Registration Statement had lapsed for more than sixty calendar days during the prior twelve months, was satisfied.

554541-1

11. The Certificate of Designation provides holders of Preferred Stock, including Portside, with certain express rights. Specifically, upon the occurrence of a "Triggering Event" of the type described above, a holder of Preferred Stock is entitled to redeem its Preferred Stock and receive from GigaBeam the number of shares of common stock equal to (i) the "Triggering Redemption Amount" divided by (ii) 75% of the average of recent trading prices of such common stock. (Ex. A § 9(b))

12. The "Triggering Redemption Amount" is defined under the Certificate of Designation as follows:

> "Triggering Redemption Amount" for each share of Preferred Stock means the sum of (i) the greater of (A) 130% of the Stated Value and (B) the product of (a) the VWAP on the Trading Day immediately preceding the date of the Triggering Event and (b) the Stated Value divided by the then Conversion Price, (ii) all accrued but unpaid dividends thereon and (iii) all liquidated damages and other amounts due in respect of the Preferred Stock."

(Ex. A at p. 9 of 32) Here, this amount equaled $451,486.26 as of July 10, 2007, calculated as follows:

i.  $444,500 representing 130% of the Stated Value of Portside's 342 shares of Preferred Stock, which was $342,000; and

ii. $6,852.00 representing accrued and unpaid dividends on the Preferred Stock, plus $34.26, representing interest on late dividends at 18%.

In the Amended Redemption Notice, the Triggering Redemption Amount increased by $27.41 to reflect additional interest on the late dividends.

13. Under the Certificate of Designation, GigaBeam was obligated to deliver shares of common stock "within five Trading Days of the date on which the notice for the payment therefor is provided by a Holder." (Ex. A § 9(b)) Because the Initial Redemption Notice was sent on July 10, 2007, GigaBeam was obligated to deliver 166,532 shares of common stock by July 17, 2007; in response to the Amended Redemption Notice, GigaBeam was obligated to

deliver an additional 55,411 shares by July 25, 2007. In breach of its agreement with Portside, GigaBeam has refused to deliver any shares of common stock to Portside.

Portside's Damages for Breach of Contract

14. I have annexed as Exhibit J a copy of the trading data for GigaBeam common stock from June 1, 2007 through August 10, 2007, obtained from Bloomberg Professional, a data service I consult. Between July 17 and July 20, 2007, GigaBeam's shares were thinly traded; indeed, the aggregate volume over these four days was only 88,500, not much more than the approximately 65,000 shares Portside could have sold based on the volume limitations imposed by SEC Rule 144. On Friday, July 20, 2007, GigaBeam announced a major sale order. A copy of its press release is annexed as Exhibit K. The following week, GigaBeam's trading volume and share price increased substantially. For the reasons set forth in the accompanying Memorandum of Law, I respectfully submit that Portside is entitled to $1,418,337.93 in money damages based on GigaBeam's failure to deliver shares of common stock to Portside.

15. As an alternative to money damages for failure to deliver stock, Portside seeks an order directing delivery of shares from GigaBeam to Portside. Portside is concerned about GigaBeam's ability to honor any monetary award. According to GigaBeam's Form 10-Q filed in August 2007, annexed as Exhibit L, GigaBeam had only $53,084 in cash at June 30, 2007. This represented a substantial decline from its position at December 31, 2006, when it had $653,734 in cash. Between July 1, 2006 and June 30, 2007, GigaBeam's cash holdings declined from $2,067,406 to $53,084. Its financial statements also indicate that there exists "substantial doubt about the Company's ability to continue as a going concern."

554541-1

Additional Damages

16.     The Registration Rights Agreement provided Portside with the right to receive partial liquidated damages upon the occurrence of an "Event," which is defined, in relevant part, as follows:

> (iv) after the Effectiveness Date, a Registration Statement ceases for any reason to remain continuously effective as to all Registrable Securities for which it is required to be effective, or the Holders are not permitted to utilize the Prospectus therein to resell such Registrable Securities for 20 consecutive calendar days but not more than an aggregate of 30 calendar days during any 12-month period (which need not be consecutive Trading Days) (any such failure or breach being referred to as an "Event," and for purposes of . . . clause (iv) the date on which such 20 or 30 calendar day period, as applicable, is exceeded being referred to as "Event Date") . . . .

(Ex. B § 2(b))  The Registration Rights Agreement further provides that "on each such Event Date and on each monthly anniversary of each such Event Date (if the applicable Event shall not have been cured by such date) until the applicable Event is cured, the Company shall pay to each Holder an amount in cash, as partial liquidated damages and not as a penalty, equal to 2% of the aggregate purchase price paid by such Holder . . . ."  (Ex. B § 2(b))  Thus, on May 15, 2007, Portside became entitled to a payment equal to 2% of the purchase price for its Preferred Stock ($342,000) and it was owed an additional payment for the same amount on June 15, 2007, for a total of $13,680.  Under the Registration Rights Agreement these amounts are earning interest at 18% per annum until paid in full because GigaBeam failed to make payment within seven days.  (Ex. B § 2(v))

17.     The Certificate of Designation also provides that the Triggering Redemption Amount earns interest at the rate of 18%, unless paid within five trading days after demand. Here, Portside is entitled to interest on $451,486.26, commencing July 25, 2007, at the rate of 18% per annum price until paid in full.

554541-1

Dated: October 5, 2007

_____
Jeffrey C. Smith