# EXHIBIT E



THE CORPORATION WILL FURNISH TO ANY STOCKHOLDER, UPON REQUEST AND WITHOUT CHARGE A FULL STATEMENT OF THE DESIGNATIONS, RELATIVE RIGHTS, PREFERENCES AND LIMITATIONS OF THE SHARES OF EACH CLASS AUTHORIZED TO BE ISSUED.

NEITHER THESE SECURITIES NOR THE SECURITIES INTO WHICH THESE SECURITIES ARE CONVERTIBLE HAVE BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSION OF ANY STATE IN RELIANCE UPON AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND, ACCORDINGLY, MAY NOT BE OFFERED OR SOLD EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT OR PURSUANT TO AN AVAILABLE EXEMPTION FROM, OR IN A TRANSACTION NOT SUBJECT TO, THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS AS EVIDENCED BY A LEGAL OPINION OF COUNSEL TO THE TRANSFEROR TO SUCH EFFECT, THE SUBSTANCE OF WHICH SHALL BE REASONABLY ACCEPTABLE TO THE COMPANY. THESE SECURITIES AND THE SECURITIES ISSUABLE UPON CONVERSION OF THESE SECURITIES MAY BE PLEDGED IN CONNECTION WITH A BONA FIDE MARGIN ACCOUNT OR OTHER LOAN SECURED BY SUCH SECURITIES.

*For Value Received,* _____ *hereby sell, assign and transfer unto* _____ *Shares represented by the within Certificate, and do hereby irrevocably constitute and appoint* _____ *Attorney to transfer the said Shares on the books of the within named Corporation with full power of substitution in the premises.*

*Dated* _____ *19*___

*In presence of* _____

NOTICE THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER.

# EXHIBIT F

424B3 1 v054171_424b3.htm

Filed pursuant to Rule 424(b)(3)
Registration No. 333-130190

6,737,847 shares of common stock

## GIGABEAM CORPORATION

The selling securityholders listed on page 14 of this prospectus are offering for resale up to 6,737,847 shares of our common stock, referred to as the "offered shares." All of the offered shares are issuable, or may in the future become issuable, with respect to securities issued in connection with the private placement of shares of our Series B convertible preferred stock, referred to as the Series B preferred stock, and common stock purchase warrants, referred to as the November 2005 warrants, that we completed in November 2005, referred to as the November 2005 financing.

The offered shares may only be offered for resale by the selling securityholders pursuant to this prospectus if and when they are actually issued. They include: (a) 2,475,412 shares of common stock issuable upon conversion and/or redemption of our Series B preferred stock, (b) an additional 1,958,453 shares of common stock that have been registered in the registration statement of which this prospectus forms a part to cover resales by the selling securityholders of shares of our common stock which may be issued to them in the future in payment of dividends on the Series B preferred stock and/or as a result of conversion price anti-dilution adjustments applicable to the Series B preferred stock, (c) 1,668,032 shares of common stock issuable upon exercise of the November 2005 warrants, (d) an additional 257,696 shares of common stock that have been registered in the registration statement of which this prospectus forms a part to cover resales by the selling securityholders of shares of our common stock which may be issued to them as a result of exercise price anti-dilution adjustments applicable to the warrants, and (e) 378,254 shares of common stock issuable upon exercise of purchase options we granted to our financial advisor in connection with our November 2005 financing, referred to as the financial advisor options. We will not receive any of the proceeds from the sale by the selling securityholders of the shares offered hereby, but we will receive proceeds from the cash exercise of any of the November 2005 warrants and the financial advisor options.

The securities offered hereby may be offered from time to time by the selling securityholders through ordinary brokerage transactions in the over-the-counter markets, in negotiated transactions or otherwise, at market prices prevailing at the time of sale or at negotiated prices and in other ways as described in the "Plan of Distribution."

Our common stock is quoted on the Nasdaq Capital Market under the symbol "GGBM." The warrants we issued in connection with our October 2004 initial public offering, referred to as the "IPO warrants," are quoted on the Nasdaq Capital Market under the symbol "GGBMW," and our other publicly traded warrants, referred to as the "Z warrants," are quoted on the Nasdaq Capital Market under the symbol "GGBMZ." On October 4, 2006, the last sale prices for our common stock, IPO warrants and Z warrants as reported by the Nasdaq Capital Market were $6.00 per share, $2.04 per IPO warrant, and $1.79 per Z warrant, respectively.

**Investing in our securities involves a high degree of risk. For more information, see "Risk Factors" beginning on page 3.**

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of these securities or determined if this prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

Exhibit A

**Provisions in our corporate documents and our certificate of incorporation and bylaws, as well as Delaware General Corporation Law, may hinder a change of control.**

Provisions of our certificate of incorporation and bylaws, as well as provisions of the Delaware General Corporation Law, could discourage unsolicited proposals to acquire us, even though such proposals may be beneficial to you. These provisions include:

- A classified board of directors that cannot be replaced without cause by a majority vote of our stockholders; and

- Our board of director's authorization to issue shares of preferred stock, on terms as the board of directors may determine, without stockholder approval.

**Provisions of Delaware General Corporation Law may restrict many business combinations.**

We are also subject to the provisions of Section 203 of the Delaware General Corporation Law, which could prevent us from engaging in a business combination with a 15% or greater stockholder for a period of three years from the date it acquired that status unless appropriate board or stockholder approvals are obtained.

**As we do not anticipate paying cash dividends, you should not expect any return on your investment except through appreciation, if any, in the value of our common stock.**

You should not rely on an investment in our common stock to provide dividend income, as we have not paid any cash dividends on our common stock and do not plan to pay any in the foreseeable future. Thus, if you are to receive any return on your investment in our common stock it will likely have to come from the appreciation, if any, in the value of our common stock. The payment of future cash dividends, if any, will be reviewed periodically by our board and will depend upon, among other things, our financial condition, funds from operations, the level of our capital and development expenditures, any restrictions imposed by present or future debt instruments and changes in federal tax policies, if any.

## USE OF PROCEEDS

We will not receive any proceeds from the sale of offered shares by the selling securityholders named in this prospectus. Any proceeds we receive from any exercise of the warrants and options pursuant to which offered shares are issuable will be used by us for working capital and other general corporate purposes.

We have agreed to pay certain expenses in connection with the registration of the securities offered by the selling securityholders for resale pursuant to this prospectus.

## SELLING SECURITYHOLDERS

Based on information provided by the selling securityholders, the table below sets forth certain information, as of September 22, 2006 unless otherwise noted, regarding the selling securityholders.

The shares being offered by the selling securityholders as set forth in the table below include, for those holding Series B preferred stock, an aggregate of 2,475,412 shares of common stock issuable upon conversion and/or redemption of their shares of Series B preferred stock, referred to below as "adjusted offered conversion shares," and their pro rata portion of an aggregate maximum of 1,958,453 additional shares of common stock that are reserved for issuance in the event we are required in the future to make any additional (i.e., in addition to those already made in August 2006, as described below) conversion price anti-dilution adjustments with respect to our Series B preferred stock and/or in the future we make dividend

payments on our Series B preferred stock in the form of common stock, such additional shares referred to below as "remaining preferred pro rata shares."

14

Percentage ownership of common stock is based on 6,008,338 shares of our common stock outstanding as of September 21, 2006. In addition, the table below assumes for calculating each selling securityholder's beneficial ownership, both prior to and after this offering, as well as each such selling securityholder's percentage ownership following this offering, that options, warrants and convertible securities held by such securityholder (but not, unless otherwise noted, those held by any other person) that are exercisable or convertible within 60 days as of September 21, 2006 have been exercised or converted and the shares underlying them added to the number of shares of our common stock deemed to be outstanding. The calculation of each selling securityholder's beneficial ownership and percentage ownership following this offering also assumes that all preferred pro rata shares and warrant pro rata shares included in those that may be offered by such selling securityholder (but not, unless otherwise noted, those that may be offered by any other selling securityholder) were issued and added to the number of shares of our common stock deemed to be outstanding. For purposes of calculating the post-offering ownership of each selling securityholder, the table also assumes the sale of all of the shares being offered by such selling securityholder pursuant to this prospectus.

| Name of selling securityholder | Number of shares of common stock beneficially owned prior to the offering | Number of offered shares being offered | Common stock beneficially owned after the offering | |
|---|---|---|---|---|
| | | | Number of shares | Percentage of outstanding shares |
| Bushido Capital Master Fund LP (1) | 226,580 (2) | 162,821 (3) | 103,629 | 1.6% |
| Crescent International Ltd. (4) | 128,073 (5) | 117,454 (6) | 62,499 | 1.0% |
| Gamma Opportunity Partners Capital Partners, LP - Class A (7) | 45,081 (8) | 52,046 (9) | -0- | -0- |
| Gamma Opportunity Partners Capital Partners, LP - Class C (7) | 45,081 (8) | 52,046 (9) | -0- | -0- |
| Gruber & McBaine International (10) | 43,706 (11) | 68,411 (12) | -0- | -0- |
| Gryphon Master Fund, LP (13) | 90,164 (14) | 104,094 (15) | -0- | -0- |
| HCFP Brenner Securities LLC (16) | 315,562 (17) | 378,254 (18) | 335,428 | 4.99% |
| Islandia, LP (19) | 315,562 (20) | 1,193,178 (21) | -0- | -0- |
| J. Patterson McBaine | 19,057 (22) | 29,829 (23) | -0- | -0- |
| Lagunitas Partners LP (24) | 159,575 (25) | 249,774 (26) | -0- | -0- |
| Leonardo, L.P. (27) | 315,562 (28) | 1,590,908 (29) | -0- | -0- |
| Midsummer Investment, Ltd. (30) | 315,562 (31) | 2,386,362 (32) | 440,865 | 4.99% |
| Omicron Master Trust (33) | 30,801 (34) | 35,559 (35) | -0- | -0- |
| Enable Growth Partners, LP (36) | 270,565 (37) | 41,638 (38) | 234,499 | 3.8% |
| Enable Opportunity Partners, LP (36) | 55,766 (39) | 10,410 (40) | 46,759 | * |
| GSSF Master Fund, LP (41) | 45,081 (42) | 52,045 (43) | -0- | -0- |
| Jon D and Linda W Gruber Trust (44) | 31,762 (45) | 49,716 (46) | -0- | -0- |
| Rockmore Investment Master Fund Ltd. (47) | 290,181 (48) | 62,879 (49) | 249,999 | 4.1% |
| Portside Growth and Opportunity Fund (50) | 56,066 (51) | 100,423 (52) | -0- | -0- |

*Less than 1%.

# EXHIBIT G



April 25, 2007

By Federal Express and E-mail
Portside Growth & Opportunity Fund
c/o Ramus Capital
666 3rd Avenue, 26th Floor
New York, NY 10017
Attn: Nancy Wu

Re: Notice of Suspension of Registration Statements

Series B Preferred Stock and Series C Preferred Stock of
GigaBeam Corporation

Dear Investor:

You are receiving this notice as a holder of Series B Convertible Preferred Stock (the "Series B Preferred Stock") of GigaBeam Corporation, a Delaware corporation (the "Company") and/or Series C Convertible Preferred Stock of the Company (the "Series C Preferred Stock") issued by the Company on November 7, 2005 and August 21, 2006, respectively.

Pursuant to Section 3(k) of the Registration Rights Agreement between the Company and the holders of the Series C Preferred Stock, dated November 7, 2006 (the "Series C Registration Agreement) and Section 3 (k) of the Registration Rights Agreement between the Company and the holders of Series B Preferred Stock, dated August 21, 2006 (the "Series B Registration Agreement"), this letter serves as notice that the Company has suspended the effectiveness of its (i) Registration Statement on Form S-3, originally effective on October 4, 2006 (SEC File No. 333-13748) (the "Series C Registration Statement") and (ii) Post-Effective Amendment No. 1 to Form SB-2 on Form S-3 Registration Statement, originally effective on October 3, 2006 (SEC File No. 333-130190). In addition, the prospectus under the Series C Registration Statement (the "Series C Prospectus") and the prospectus under the Series B Registration Statement (the Series B Prospectus) may not be used to consummate a sale or trade of any of the "offered shares" as listed in such Series C Prospectus and/or Series B Registration Statement, as the case may be, until further written notice is provided by the Company. This notice of suspension resulted from the Company's late filing by a few minutes of its Annual Report on Form 10-KSB for the year ended December 31, 2006.

**The Company is preparing the appropriate amendments and other filings to file with the Securities and Exchange Commission to ensure that the use of the Series C Prospectus and/or the Series B Prospectus may be resumed as promptly as practicable.**

April 25, 2006
Page 2

In order to continue to conserve its cash, the Company requests that you waive the Company's obligation to pay liquidated damages if an Event occurs under clause (iv) of Section 2(b) of the Series C Registration Agreement and/or Series B Registration Agreement, as the case may be, as a result of the Series C Registration Statement and/or Series B Registration Statement, as the case may be, ceasing to remain continuously effective, subject to permitted exceptions.

Please execute and sign below if you acknowledge, consent and agree to waive the rights as set forth herein and fax a copy of this letter to the Company at (571) 283-6203. By executing below, you acknowledge and agree that this waiver is individual to you without regard to whether it is executed by the other holders of Series B Preferred Stock and/or Series C Preferred Stock. All other terms and conditions in the Series C Registration Agreement and Series B Registration Agreement remain in full force and effect.

We appreciate your continued support of the Company. You will be notified immediately when the Series C Prospectus and Series B Prospectus resume effectiveness.

Very truly yours,
GigaBeam Corporation

By: _____
Name: Leighton Stephenson
Title: Chief Financial Officer


As of ____ ___, 2007, acknowledged and agreed:
Portside Growth & Opportunity Fund

By: _____
Name: _____
Title: _____