UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PORTSIDE GROWTH AND OPPORTUNITY
FUND,

                        Plaintiff,           Case No. 07 CIV 6990 (NRB)

-against-

GIGABEAM CORPORATION,

                        Defendant.
-----------------------------------------------------------X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant Gigabeam Corporation ("Gigabeam"), by its attorneys, The Roth Law Firm PLLC, respectfully submits this memorandum of law in opposition to Plaintiff Portside Growth and Opportunity Fund's ("Portside"), Motion for Summary Judgment, as follows:

### PRELIMINARY STATEMENT

In this breach of contract matter, the ultimate determination to be made by the trier of fact is whether Portside received the benefit of its bargain. Portside briefly addresses this ultimate issue in its Memorandum of Law in Support of Motion for Summary Judgment, dated October 5, 2007 (Plaintiff's "Memo of Law"), wherein it states:

> … the redemption provision[1] reflects Gigabeam's assurance to investors that it would be able to satisfy the reporting and other requirements necessary to have an effective registration statement in place for two years. Once Gigabeam failed to honor that promise, the parties' agreement established a redemption right for holders of Preferred Stock. Portside is entitled to the benefit of that bargain.

Memo of Law, pgs. 9-10.

---

[1] Referring to Section 9(a)(ii) of the Certificate of Designation of Preferences, Rights and Limitations of Series B Convertible Preferred Stock (the "Certificate of Designation" is annexed as Exhibit A to the Declaration of Jeffrey C. Smith, sworn to on October 5, 2007 (the "Decl. Smith")).

In so doing, however, Portside ignores the clear import of ***all*** of the language contained in Section 9(a)(ii) of the Certificate of Designation[2] and specifically misapplies that section's relation to Section 2(a) of the Registration Rights Agreement.[3] That is, the purpose of Section 9(a)(ii) of the Certificate of Designation is not that the Conversion Shares Registration Statement (the "Registration Statement") must be made continuously effective -- that is merely one means to the ultimate end. Rather, the intent of Section 9(a)(ii) as a whole was simply to ensure that investors (such as Portside) are permitted to sell their Registrable Securities. That is why the language of Section 9(a)(ii) specifically ***explains*** that ultimate right.

What Portside is claiming is that despite the fact that it was indeed able to sell its Registrable Securities without volume restrictions (pursuant to Rule 144), a "Triggering Event" occurred because the Registration Statement was not made continuously effective and therefore Portside's Registrable Securities could not be sold through that method. Portside's argument, however, ignores the purpose of Gigabeam's agreement to protect Portside from that very Triggering Event. Consider the following example wherein a landlord agrees to pay money damages to a tenant in a commercial lease if the following contractual clause is triggered:

> Landlord shall continuously do business with ConEd, or Landlord shall continuously supply Tenant with electricity.

Portside here is taking the inequitable position that if the Landlord fails to do business with ConEd, Tenant will be entitled to damages -- despite the fact that the Landlord never failed to continuously supply Tenant with electricity (albeit from a different source). Did the Tenant receive the benefit of the bargain? Absolutely. The same is true for Portside.

---

[2] In fact, Portside's interpretation of the first half of Section 9(a)(ii) of the Certificate of Designation would render the second half of that same subsection meaningless.

[3] The "Registration Rights Agreement" is annexed as Exhibit B to the Decl. Smith.

As shown below, and in the accompanying Declaration of Amy Trombly (sworn to on November 2, 2007) (the "Decl. Trombly"), a Triggering Event never occurred and thus **_Portside's "right of redemption"_** -- which forms the underlying basis of Portside's entire case -- **_never existed_**. The underlying agreements (as related to the subsequent circumstances) are clear that Portside has never been denied the benefit of its bargain and therefore cannot be permitted to recover any of its alleged damages. If Portside does eventually receive the relief it seeks, such recovery will be a **_one-hundred percent windfall_**. In the mean time, material issues of fact exist so as to warrant a denial of Portside's motion for summary judgment in its entirety.

## STATEMENT OF FACTS

The Statement of Facts have already been stated in the accompanying Declaration of Amy Trombly and in Gigabeam's Rule 56.1(b) Counter-Statement of Undisputed Facts, and thus Gigabeam will not state the facts again here but respectfully refer the Court to such documents for the contents therein.

## ARGUMENT

## SUMMARY JUDGMENT MUST BE DENIED

### A.  The Standard of Review on a Breach of Contract Claim

Summary judgment is only appropriate when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In addressing a motion for summary judgment, "***the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor.***" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis added). Whether any

3

disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d Cir. 1989).

The initial burden of demonstrating the absence of a disputed issue of material fact is on the moving party. *Celotex v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). After a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Of course, the party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas,* 143 F. 3d 105, 114 (2d Cir. 1998).

Summary judgment is appropriate in a breach of contract action where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning. *See Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,* 84 F.3d 91, 98 (2d Cir. 1996). Contract language is unambiguous when it has "'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'" *Hunt Ltd. v. Lifschultz Fast Freight, Inc.,* 889 F.2d 1274, 1277 (2d Cir. 1989)(quoting *Breed v. Ins. Co. of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978))(emphasis added).

Moreover, as admitted in Portside's Memo of Law (at page 8), under Delaware Law, ***"[i]n construing the meaning of written contracts***, the court's first obligation to the parties is to determine the nature and scope of the contractual rights and obligations [the parties] created and to enforce those rights and obligations in accordance with the law." *Meritxell, Ltd. v. Saliva Diagnostic Systems, Inc.*, No. 96 CIV. 2759, 1998 WL 40148, at * 6 (S.D.N.Y. Feb. 2, 1998)(quoting *US West, Inc. v. Time Warner, Inc.*, Civ. A. No. 14555, 1996 WL 307445, at *9 (Del. Ch. June 6, 1996)(emphasis added).

4

Here, "in construing the meaning" of the Certificate of Designation and Registration Rights Agreement the Court should absolutely attempt to determine the intent of the parties in order to ensure that the parties have received the benefit of their bargain, and thus no party will receive a windfall. Gigabeam and Portside both believe the contractual language at issue unambiguously shows that their respective understanding is the correct one -- however, as explained below, only Gigabeam's interpretation takes into account the intention of the parties at the time the agreements were written.

### B. The Contracts as Well as Portside's Own Conduct, Unambiguously Show that Portside has Never Been Denied the Benefit of its Bargain and Gigabeam Has Not Breached Any Agreement with Portside

As pointed out by Portside, there are essentially two operative agreements: (i) the Registration Rights Agreement; and (ii) the Certificate of Designation. Portside claims that a Triggering Event occurred under Section 9(a)(ii) of the Certificate of Designation and that the Registration Rights Agreement confirms Gigabeam's obligation to maintain the effectiveness of the Registration Statement. The relevant language of both documents (as applied to the circumstances) unambiguously shows that Portside has received the benefit of its bargain, making Portside's interpretation clearly erroneous.

#### i. The Certificate of Designation

Section 9(a)(ii) of the Certificate of Designation states that a Triggering Event occurs:

> [I]f, during the Effectiveness Period, the effectiveness of the Conversion Shares Registration Statement lapses for any reason for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period, or the Holder shall not be permitted to resell Registrable Securities under the Conversion Shares Registration Statement for more than an aggregate of 60 calendar days (which need not be consecutive) during any 12 month period.

Decl. Smith, Exh. A, Section 9 (a)(ii).

Portside apparently reads that statement to literally mean that there are two separate and distinct ways (under that one subsection) for a Triggering Event to occur. That interpretation, however, would render all of the language after the "or" totally meaningless, and thus grant Portside a windfall where one was never intended to be granted.

Rather, the only way to read the subsection which takes into account the language as a whole, is that the second statement (following the ", or") merely explains the first (i.e. the effect of a "lapse" would be the inability to resell the Registrable Securities). That is, the point of the this subsection is that investors must be permitted to resell the Registrable Securities stated in the Registration Statement. Obviously, keeping the Registration Statement effective would be the most direct means to that end. That is why that ***method*** is specifically stated in the former half of the subsection. But the second statement in that subsection (following the ",or") -- the statement that Portside casually glosses over on page 4 of its Memo of Law as a "..." -- makes clear that keeping the Registration Statement effective is not the only method available for such re-sale of Registrable Securities.

Said differently, Portside is taking the word "or" to mean "one *or* the other" when the intent of that ", or" was simply to convey an explanation of the first statement.[4] The subsection stated a specific method to achieve the ultimate end but then made clear that substance is more important then form. Even the term-length of the two statements are exactly the same: "60 calendar dates (which need not be consecutive) during any 12 month period."

---

[4] The word "or" is a conjunction and has several different usages in the English language. *Dictionary.com Unabridged* (v 1.1), lists six different usages -- two of them being: (i) "used to connect alternative terms for the same thing" and (ii) "used to correct or reprase what was previously said." Similarly, *Encarta World English Dictionary* (North American Edition 2007), lists one definitional use of the word "or" as, "used to give an explanation of a statement just made." This is also a definition given in the *Cambridge Dictionary of American English* (Cambridge Univ. Press 2007) ("used to show that a word or phrase means the same as, or explains or corrects, another word or phrase").

6

Gigabeam has assured Portside that it will be able to resell its Registrable Securities -- and regardless of whether the Registration Statement lapsed or not, Portside has never been denied that right.

### ii.    The Registration Rights Agreement

Section 9(a)(ii) of the Certificate of Designation relates directly to Section 2(a) of the Registration Rights Agreement:

> ... the Company shall ... use its best efforts to keep such Registration Statement continuously effective under the Securities Act until all Registrable Securities covered by such Registration Statement have been sold *or may be sold* without volume restrictions pursuant to Rule 144(k) *as determined by the counsel to the Company* pursuant to a written opinion letter to such effect...

Decl. Smith, Exh. B, Section 2 (emphasis added).

The language of Section 2(a) of the Registration Rights Agreement underscores that Gigabeam's reading of Section 9(a)(ii) of the Certificate of Designation is the correct one. That is, Section 2(a) makes clear that the purpose of the Registration Statement being continuously in effect is so that the investors are able to sell their Registrable Securities. But even more importantly, the language also conveys that the effectiveness of the Registration Statement shall become irrelevant if, according to "counsel for the company" (i.e. Trombly Business Law), there is another method to permit such investor to sell their Registrable Securities without volume restrictions.[5]

---

[5] The reason Section 2(a) stated "Rule 144(k)" is to ensure investors that investors can sell without volume restriction. Specifically, Rule 144(k) requires investors to wait two years in order to sell without volume restrictions (that is why Portside argues that it could not have sold under Rule 144(k) until November 7, 2007). However, under Rule 144, investors who have held their securities merely for one year can sell without volume restrictions as long as such investor, among other things, holds less then 1% of the outstanding shares of the company. As stated herein, Portide met all of the requirements to sell under Rule 144 -- thus Portside could have sold without volume restrictions as early as November 7, *2006*. The fact that Rule 144(k) was irrelevant because Portside could have sold under Rule 144 underscores the silly nature of Portside's argument.

7

As stated below and in the Declaration of Amy Trombly (at paragraphs 8 and 9), Portside was at all relevant times able to sell all of its Registrable Securities without volume restrictions. As such, the effectiveness of the Registration Statement was irrelevant as to Portside (and thus no Triggering Event occurred under Section 9 (a)(ii) of the Certificate of Designation).

### iii. Portside Has at All Relevant Times Been Able to Sell its Registrable Securities Without Volume Restrictions

Portside's entire analysis regarding Rule 144 in its Memo of Law (at pages 12-14) assumes a Triggering Event occurred (which it did not) and thus fails to perform any Rule 144 analysis regarding the shares actually owned by Portside (that is, without assuming shares owed as a result of a Triggering Event).

Portside does **_not_** own 166,532 shares as it claims in its Memo of Law -- it owns (under a straight conversion of the Series B shares to common stock) merely 56,066 shares. *See*, Decl. Smith, Exh. F. That amount was at all relevant times below the 1% threshold of outstanding Gigabeam common shares that may be permissibly sold under Rule 144. *See*, Decl. Trombly, ¶ 8. Thus, at all relevant times -- and even prior to the alleged lapse in the Registration Statement (as discussed below) -- Portside could have sold all of its shares of common stock without volume restrictions (as it did not own enough shares for the volume restrictions to even be relevant). Obtaining an opinion letter from Gigabeam's corporate counsel, in order to effectuate such sale, ***would have cost Portside a total of $350.***[6] *See, Id.*, ¶¶ 8 and 10.

Accordingly, under a reasonable reading of both Section 9(a)(ii) of the Certificate of Designation and Section 2(a) of the Registration Rights Agreement, Portside was (at all relevant times) able to sell all of its Registrable Securities without volume restrictions and thus any lapse in the Registration Statement was totally irrelevant as to Portside. At a minimum, no Triggering

---

[6] Indeed, Portside's damages, if any, should be capped at $350.

Event occurred as to Portside. There is thus no basis for Portside to even allege a breach of contract (let alone be able to meet its burden of proving such breach).

### iv. A Registration Statement Lapse is Not a *Per Se* Triggering Event as to All Investors

Assuming the Registration Statement lapse caused a Triggering Event to occur as to other investors (who were not eligible to sell their Registrable Securities without volume restrictions as was the case with Portside), that would have no effect on Portside, as the agreements are severable as to each of the investors' rights.

It is hornbook law that a contract "is severable, when, in its nature and purpose, it is susceptible of divisions and appointment, and has two or more parts in respect to matters or things contemplated and embraced by the contract which are not necessarily dependent upon each other." 17A Am.Jur.2d Contracts § 408 (2006); *see also Black's Law Dictionary* 141 (2nd Pocket Ed. 2001) ("A contract that includes two or more promises, each of which can be enforced separately, so that failure to perform one of the promises does not necessarily put the promisor in breach of the entire contract"). The language of the Certificate of Designation itself (under "Severability") states in relevant part, "… if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances." *See*, Decl. Smith, Exh. A, Section 11(f).

Moreover, Portside claims that the Gigabeam letter dated April 25, 2007 (annexed a letter to the Declaration of Jeffrey C. Smith as Exhibit G) states that the effectiveness of the Conversion Shares Registration Statement was suspended for more than sixty days after April 25, 2007 and such statement is somehow proof of Gigabeam's breach of contract. Gigabeam does not dispute what the letter states. Rather, Gigabeam respectfully suggests that the letter further proves its position that such Registration Statement lapse does not, in and of itself, cause

9

a Triggering Event to occur. Indeed, after stating that a Registration Statement lapse occurred, page 2 of the letter goes on to state that, "... the Company requests that you waive the Company's obligation to pay liquidated damages *if an Event occurs...*" See, Decl. Smith, Exh. G, pg. 2 (emphasis added).

A Registration Statement lapse is not a *per se* "Triggering Event" -- and even if it is a Triggering Event as to some investors, it is certainly not a Triggering Event as to all (regardless of the circumstances).

      v.    **Even if a Triggering Event Occurred as to Portside, as a Result of a Lapse of the Registration Statement, <u>Such Triggering Event was Cured</u>**

Assuming a Triggering Event occurred under Section 9(a)(ii) of the Certificate of Designation as a result of the Registration Statement's lapse (as Portside suggests), Section 9(b) of that same agreement states that such a Triggering Event may be cured, as a "right of redemption" only occurs, "[u]pon the occurrence *and continuation* of a Triggering Event..." See, Decl. Smith, Exh. A, Section 9(b) (emphasis added). Here, not only did Gigabeam cure immediately upon such an event's occurrence, but the cure actually happened prior to the occurrence of the Triggering Event in question!

Portside was indeed permitted to sell its Registrable Securities (under Rule 144) as early as *November 7, <u>2006</u>*.[7] See, Decl. Trombly, ¶ 8. By its own admission, the Triggering Event in question did not occur until *April 2007* and the very first time Portside attempted to "exercise its redemption rights" was *July 10, 2007*. See, Decl. Smith, Exh. H. As such, even if a Registration Statement lapse occurred, the effect that such a lapse *could have had on Portside* (i.e. not being able to sell its Registrable Securities) was cured before it even happened. Portside cannot reasonably argue to the contrary.

---

[7] Rule 144(d)(1) allows Portside to tack the time held by its predecessor-in-interest, Omicron Master Trust.

### vi.  Portside Has Not Substantially Complied with the Registration Rights Agreement and Thus Cannot Now Complain of Gigabeam's Alleged Breach

If at any time Portside desired to sell its Registrable Securities (without regard to the effectiveness of the Registration Statement), Portside was obligated under Section 2(a) of the Registration Rights Agreement to seek a determination from Gigabeam's counsel as to whether it was entitled to sell its Registrable Securities without volume restrictions. *See*, Decl. Smith, Exh. B, Section 2(a). ***Portside failed to ever approach Gigabeam or its corporate counsel to inquire about its ability to sell its Registrable Securities.*** Not only is such inaction proof of the disingenuous nature of Portside's current legal position (that it was harmed by being denied the right to sell its Registrable Securities), such inaction also shows that Portside has not substantially complied with its own obligations under the Registration Rights Agreement.

Importantly, had Portside abided by its obligations under the Registration Agreement, Portside would have learned from Gigabeam's counsel that Portside was at all relevant times entitled to sell all of its Registrable Securities without volume restrictions (under Rule 144) and thus, any such lapse in Registration Statement would have no effect whatsoever on Portside.[8]

It is a staple in Delaware law that, "[i]n order to recover damages for any breach of contract, plaintiff must demonstrate substantial compliance with all the provisions of the contract." *Emmett Hickman Co., Emelio Capano Developer, Inc.*, Del. Super., 251 A.2d 571, 573 (1969); *Braxton v. Adirondack Group, Inc.*, Civ. Action No. 2001-12-198, 2003 Del. C.P. LEXIS 32, at * 9-13 (Del. C.P. 2003). Here, Portside's substantial non-compliance will ultimately prove fatal to its case -- but for purposes of its summary judgment motion, Portside has certainly not met its burden of showing substantial compliance on its own part.

---

[8] Portside (and its own corporate counsel) are unquestionably sophisticated in these transactions, and thus Gigabeam respectfully suggests that Portside was at all times well aware of its ability to sell under Rule 144 had it actually had the desire to do so. Portside's credibility will certainly be an issue at trial.

11

### C. Portside's Damages Calculation (including its request for Equitable Relief) is Erroneous and Should Not Even be Considered at This Time

As stated above, Portside's entire damages calculation (and legal analysis for that matter) is fatally flawed because it assumes as true highly contested facts that have yet to be proven (the very opposite of how this Court must view the facts for purposes of the pending motion).[9]

Indeed, Portside's underlying assumption, that "[t]he facts regarding Gigabeam's breach of contract are not in dispute" (Memo of Law, pg. 8) is not only incorrect it is outrageous. How dare Portside represent to the Court that the ultimate issue to be determined is "not in dispute" -- Gigabeam has not even been afforded the opportunity to Answer the Complaint! As stated above, because no Triggering Event occurred, Gigabeam has not breached any contract. As a result, Portside never had a "right of redemption" and thus Gigabeam's alleged failure to "deliver the shares of common stock to which Portside was entitled" (see, Memo of Law, pg. 8) is a non-sequitur.

The cases cited by Portside all start with the proposition that, "… a plaintiff was wrongfully deprived of the ability to sell securities he was contractually entitled to sell…" Memo of Law, pg. 10. Ironically, if the Court were to apply this law to the facts here, Portside's case would have to be dismissed! At all relevant times, ***Portside could have sold all of its shares of common stock without volume restrictions*** (as it did not own enough shares for the volume restrictions of Rule 144(k) to even be relevant). Portside's argument that Gigabeam has in any way "wrongfully deprived" Portside of the ability to sell its securities is nonsense.

Since November 7, 2006, Portside has been able to sell all of its Registrable Securities. The reality is, however, that Portside did not desire to sell its shares (as evidenced by its

---

[9] As stated above, for purposes of this motion for summary judgment, the Court should view the evidence in the light most favorable to Gigabeam and must draw all reasonable inferences in Gigabeam's favor. *See, Matsushita,* 475 U.S. 574, 587.

12

intentional failure to seek an opinion letter from Gigabeam's corporate counsel that would have cost $350). The truth is that ***Portside does not want to sell its Registrable Securities -- Portside only wants a windfall.***

Despite the fact that there are a plethora of material issues of fact standing in the way of summary judgment,[10] because the "breach of contract" is based in its entirety on a fictitious assumption, Portside's claims must ultimately fail.

### CONCLUSION

For all of the reasons stated above, as well as the reasons stated in the accompanying Declaration of Amy Trombly, Gigabeam respectfully requests that the Court deny Portside's motion for summary judgment in its entirety and permit Portside to submit its Answer to the Complaint.

DATED:    New York, New York
          November 5, 2007

THE ROTH LAW FIRM, PLLC

By: _____
    Richard A. Roth (RAR 5538)
    Jordan M. Kam (JK 8938)
545 Fifth Avenue, Suite 960
New York, New York 10017
Tel: (212) 542-8882
Fax: (212) 542-8883
*Attorneys for Defendant*

---

[10] At minimum, the following material issues of fact exist: (i) whether a Triggering Event occurred; (ii) whether the language of either or both of the underlying agreements are susceptible to more then one reasonable interpretation; (iii) whether a Registration Statement lapse is a *per se* Triggering Event as to all of the investors; (iv) whether Gigabeam cured the Triggering Event assuming such event occurred; (v) whether Portside substantially complied with the underlying agreement of which it now claims Gigabeam has breached; and (vi) whether assuming a Triggering Event occurred that did not materially harm Portside, Portside should nevertheless be able to receive a monetary windfall.

## **AFFIRMATION OF SERVICE**

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK   )

JORDAN M. KAM, ESQ., affirms under penalties of perjury:

1. I am over the age of 21 years, am not a party to this action, and reside in New York, New York.

2. On November 5, 2007, I caused the foregoing to be served by Federal Express overnight mail, on counsel for Plaintiff, at the address listed below:

> Thomas J. Fleming, Esq.
> Olshan Grundman Frome Rosenzweig & Wolosky LLP
> Park Avenue Tower
> 65 East 55th Street
> New York, New York 10022

_____
Jordan M. Kam