UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PORTSIDE GROWTH AND OPPORTUNITY FUND,

                      Plaintiff,

      -against-

GIGABEAM CORPORATION,

                      Defendant

Case No. 07 Civ. 6990 (NRB)

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Plaintiff*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

558849-3

Table of Contents

Page

Preliminary Statement ........................................................................................................1

    1.     GigaBeam's Certificate of Designation ...............................................................2

    2.     The Registration Rights Agreement ....................................................................5

    3.     The Alleged Cure .................................................................................................6

    4.     GigaBeam's Deficient Opposition Papers ............................................................6

    5.     The Alleged Hardship ..........................................................................................8

Conclusion .........................................................................................................................9

i

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PORTSIDE GROWTH AND OPPORTUNITY FUND,<br><br>                              Plaintiff,<br><br>             -against-<br><br>GIGABEAM CORPORATION,<br><br>                              Defendant | Case No. 07 Civ. 6990 (NRB) |

PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT

      Plaintiff Portside Growth and Opportunity Fund ("Portside"), by its attorneys, Olshan Grundman Frome Rosenzweig & Wolosky LLP, submits this memorandum in further support of its motion for summary judgment.

Preliminary Statement

      Defendant GigaBeam Corporation ("GigaBeam") now concedes that Portside is a valid holder of Series B Convertible Preferred Stock (the "Preferred Stock"). It also offers no evidence contrary to Portside's computation of damages. Nor does it challenge the legal analysis underlying that computation.

      Rather, Gigabeam opposes summary judgment on a single ground – its theory that the language in the parties' agreements should be read so that Portside's redemption right expired once its Preferred Stock could be converted and sold under certain exemptions afforded by SEC Rule 144 for persons who have held shares for longer than one year. Not one word in the

558849-3

Certificate of Designation[1] or the Registration Rights Agreement[2] provides the remotest support for GigaBeam's theory.  Nor does GigaBeam offer an affidavit by a person with first-hand knowledge attesting to its theory.  If GigaBeam and the investors who purchased the Preferred Stock had wanted to provide for the business agreement now advocated by GigaBeam, they could easily have expressed such terms.  For the reasons set forth below, the Court should reject GigaBeam's invitation to re-write the agreements through which it raised approximately $18 million in a sophisticated private placement.

1. <u>GigaBeam's Certificate of Designation</u>

The parties agree that the definition of a "Triggering Event" to establish a right of redemption is set forth in Section 9(a)(ii) of the Certificate of Designation, which provides:

> "Triggering Event" means . . . if, during the Effectiveness Period, the effectiveness of the Conversion Shares Registration Statement lapses for any reason for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period, or the Holder shall not be permitted to resell Registrable Securities under the Conversion Shares Registration Statement for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period.

(Smith Dec. Ex. A § 9(a)(ii))

In seeking summary judgment, Portside demonstrated that, at the time of redemption, it had satisfied both of the criteria in this subsection, namely the "Conversion Shares Registration Statement" had lapsed for more than sixty days and Portside had not been permitted to resell registrable securities under the Conversion Shares Registration Statement for more than an aggregate of sixty calendar days.  The "Conversion Shares Registration Statement" is a defined

---

[1] Certificate of Designation of Preferences, Rights and Limitations of Series B Convertible Preferred Stock ("Certificate of Designation") annexed as Exhibit A to the Declaration of Jeffrey C. Smith, sworn to on October 5, 2007 (the "Smith Dec.").

[2] Registration Rights Agreement, dated as of November 7, 2005, by and among GigaBeam, Portside (as successor in interest to Omicron Master Trust) and the other purchasers party thereto ("Registration Rights Agreement") annexed as Exhibit B to the Smith Dec.

term that refers to the registration statement that GigaBeam was obligated to file under the Registration Rights Agreement so that holders of Preferred Stock would have freely tradeable common stock, if they elected to convert. (Smith Dec. Ex. A at p. 4) By letter dated April 25, 2007, GigaBeam advised Portside that the effectiveness of the Conversion Shares Registration Statement had been suspended by the Securities and Exchange Commission. (*Id.* Ex. G)

According to GigaBeam, the term "or" in Section 9(a)(ii) is neither conjunctive, nor disjunctive, but simply intended to provide an example that GigaBeam believes it can rely on to show that no Triggering Event has occurred. GigaBeam's theory suffers from two flaws. First, the language nowhere suggests that the term "or" provides an example. More important, this alleged insight does not make any difference. At the time of redemption, Portside had not been permitted for more than sixty calendar days to resell securities "under the Conversion Shares Registration Statement…." Thus, regardless of whether the second part of Section 9(a)(ii) is an example of the Triggering Event set forth in the first part of such Section or effectively sets forth an additional Triggering Event, the fact that the Conversion Shares Registration Statement was not effective for more than 60 calendar days necessarily means that a "Triggering Event" occurred for purposes of both parts of such Section.

GigaBeam's theory appears to be that the Court should elide the words "under the Conversion Shares Registration Statement" from the latter portion of Section 9(a)(ii), implying that if Portside could sell shares while this Registration Statement was suspended, a Triggering Event should not be deemed to have occurred. GigaBeam's request that the Court rewrite the Certificate of Designation is repugnant to Delaware law. *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998) ("Delaware observes the well-

3

558849-3

established general principle that . . . it is not the proper role of a court to rewrite or supply omitted provisions to a written agreement.").

For example, in *Milford Power Co. v. PDC Milford Power, LLC*, 866 A.2d 738 (Del. Super. 2004), the defendant argued against the express terms of an LLC agreement, seeking to obtain a better deal. The court enforced the agreement as written, explaining that "[m]any sophisticated parties . . . sign contracts that have terms that might be considered onerous; our law does not relieve them of the burden of those decisions simply because of their after-the-fact regrets." *Id.* at 748.

GigaBeam suggests that the resale restrictions imposed by Rule 144 on a selling shareholder who, like Portside, has held unregistered securities for more than one year (but less than the two years that, pursuant to Rule 144(k), would permit resales without restriction) are not material, and thus Portside was not harmed by GigaBeam's failure to maintain the effectiveness of the Conversion Shares Registration Statement. This is both incorrect and irrelevant. Under the one-year exemption available under Rule 144, Portside would be required to give notice to the market of its plans to sell and would also be limited in the manner of sale, among other things. 17 C.F.R. § 230.144 (e) & (f).

Additionally, GigaBeam's statement that as long as Portside can sell securities in some manner, the Triggering Event has not occurred, is simply contrary to the express language of the Certificate of Designation. The determination as to whether there has been a Triggering Event can and should be made based solely on the status of the effectiveness of the Conversion Shares Registration Statement, not in combination with the individual investors' circumstances. As such, GigaBeam's attempt to cloud the issue by referring to the severability language in the Certificate of Designation, which is irrelevant in any case, should be disregarded.

2. The Registration Rights Agreement

GigaBeam next seeks support for its after-the-fact revision of the transaction documents from the language of the Registration Rights Agreement. Section 2(a) of the Registration Rights Agreement sets forth the time period during which the Conversion Shares Registration Statement must remain in effect. It provides:

> . . . the Company … shall use its best efforts to keep such Registration Statement continuously effective under the Securities Act until **all** Registrable Securities covered by such Registration Statement have been sold or may be sold **without volume restrictions pursuant to Rule 144(k)** as determined by the counsel to the Company pursuant to a written opinion letter to such effect, addressed and acceptable to the Company's transfer agent and the affected Holders (the "Effectiveness Period").

(Smith Dec. Ex. B § 2(a))  (emphasis added)

According to defendant GigaBeam, Section 2(a) is satisfied if GigaBeam's counsel, Ms. Trombly, provides an opinion that Portside's shares may be sold pursuant to exemptions under Rule 144 without an effective Registration Statement in place. Again, the words in the Registration Rights Agreement provide no support for GigaBeam's position. In simple English, Section 2(a) obligates GigaBeam to keep a Registration Statement continuously effective until "*all* registrable securities covered by such Registration Statement have been sold or may be sold *without volume restrictions pursuant to Rule 144(k)*…." (emphasis added) By its express terms, this language does not single out individual investors. Rather, it imposes an obligation to maintain an effective Registration Statement for the benefit of all investors until "all registrable securities" may be sold "without volume restrictions pursuant to Rule 144(k)." This event could not occur, as a matter of law, until two years after the issuance of the securities, or November 7, 2007. 17 C.F.R. § 230.144(k).

5

According to GigaBeam, "counsel for the Company may issue an opinion that would permit an investor to sell their registrable securities without volume restrictions." The problem with this theory is that under the plain language of Section 2(a) of the Registration Rights Agreement, the opinion of counsel must be one that provides that "*all* Registrable Securities… may be sold without volume restrictions pursuant to Rule 144(k)…." (emphasis added)  Ms. Trombly did not, and could not, issue such an opinion at the time Portside redeemed its Preferred Stock, nor could she have prior to November 7, 2007.

The Court should reject the proposed opinion proffered by Ms. Trombly as contrary to the plain language in the Registration Rights Agreement.

  3. <u>The Alleged Cure</u>

According to GigaBeam, its default, if any, was cured before it occurred.  GigaBeam offers this curious analysis based on its theory that Portside's ability to sell shares pursuant to Rule 144(e), 17 C.F.R. § 230.144(e), provided a "cure" for the alleged default.  This is simply a re-packaging of GigaBeam's theory that the Certificate of Designation and Registration Rights Agreement do not mean what they say.

  4. <u>GigaBeam's Deficient Opposition Papers</u>

A nonmoving party on a summary judgment motion "in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in its favor." *Century Pacific, Inc. v. Hilton Hotels Corp.*, No. 03-CV-8258 (KMK), 2007 WL 3036172, at 8 (S.D.N.Y. Oct. 17, 2007) (quoting *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "The motion 'will not be defeated merely . . . on the basis of conjecture or surmise.'" *Id.* (quoting *Goenaga*, 51 F.3d at 18).

GigaBeam has not come forward with evidence to support its assertion that its reading of the transaction documents reflects the intent of the parties.  Affidavits or declarations in

6

558849-3

opposition to a motion for summary judgment must be made on personal knowledge. Fed. R. Civ. P. 56(e); *Union Ins. Society of Canton, Ltd. v. William Gluckin & Co.*, 353 F.2d 946, 952 (2d Cir. 1965). An affidavit by an attorney for the non-movant "which does not contain probative, material facts, or is not based on first-hand knowledge, is not entitled to any weight, and is not in compliance with Rule 56(e)." *Rubinberg v. Hydronic Fabrications, Inc.*, 775 F.Supp. 56, 60 (E.D.N.Y. 1991). *See also Aniero Concrete Co. v. New York City Constr. Auth.*, No. 94 Civ. 3506, 2000 WL 863208, at *22 (S.D.N.Y. June 27, 2000) (granting summary judgment based on terms of a contract where party opposing has not submitted affidavit by individual with personal knowledge supporting its position).

Defendant's sole proof in opposition to summary judgment is the Declaration of Amy Trombly. Ms. Trombly does not claim any personal knowledge of the meaning of the agreements. She did not draft or negotiate the agreements. Rather, her declaration is "based on [her] review of the underlying agreements in this matter, including all documents submitted by [Portside], as well as [her] understanding of the issues raised therein as [her] firm's status as 'counsel to the company'" under the Registration Rights Agreement. (Trombly Decl. at ¶ 1). Ms. Trombly's declaration is of no probative value to the interpretation of the contract and must be disregarded. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1096 (2d Cir. 1993) (defendant's corporate attorney's "argumentative and conclusory" affidavit as to intent of parties to contract was "immaterial to any determination of the parties' intent").

The Trombly Declaration must be ignored for a second reason. "Unless the contract language is ambiguous, 'extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity.'" *In re Explorer Pipeline Co.*, 781

7

558849-3

A.2d 705, 713-14 (Del. Ch. 2001) (quoting *Eagle Industries, Inc. v. DeVibliss Health Care, Inc.*, 702 A.2d 1228, 1233 (Del. 1997); *see also Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006) ("Only where the contract's language is susceptible of more than one reasonable interpretation may a court look to parol evidence; otherwise, only the language of the contract itself is considered in determining the intentions of the parties."); *Meritxell, Ltd. v. Saliva Diagnostic Systems, Inc.,* No. 96 Civ. 2759, 1998 WL 40148, at *7 (S.D.N.Y. Feb. 2, 1998) (applying Delaware law: "it is axiomatic that courts will not consider parol evidence if the contract language is unambiguous; only if the contract language is ambiguous will courts consider parol evidence bearing upon the contract's negotiation or the intent of the contracting parties."). Ms. Trombly's observations are extrinsic evidence that cannot be offered to generate an alleged ambiguity where, as here, the transaction documents are unambiguous on their face.

     5.     <u>The Alleged Hardship</u>

Defendant GigaBeam's suggestion that Portside may receive a windfall is both mistaken and irrelevant.

In order to raise approximately $18 million from outside investors, GigaBeam made a bargain: it assured investors that they would have free-trading shares by agreeing to keep in place a Conversion Shares Registration Statement until the second anniversary of the deal, or until all securities had been sold, if that occurred earlier, and gave investors a redemption right if it failed to do so. The gravamen of this bargain was that defendant GigaBeam's accounting and legal systems were sound and that it could continue to satisfy SEC reporting requirements for the near future. Defendant GigaBeam did not fulfill its part of the bargain, and Portside exercised its agreed upon right of redemption. GigaBeam now desires to rewrite that bargain and deprive Portside of the consideration to which it is entitled.

8

558849-3

<u>Conclusion</u>

Based on the foregoing, plaintiff Portside respectfully requests that the Court grant its motion for summary judgment and award plaintiff its attorneys' fees.

Dated: New, York, New York
November 16, 2007

                                      OLSHAN GRUNDMAN FROME
                                      ROSENZWEIG & WOLOSKY LLP

                                      By:   /s/ Thomas J. Fleming
                                              Thomas J. Fleming (TF 4423)
                                              Joshua S. Androphy (JA 1481)
                                              *Attorneys for Plaintiff*
                                              Park Avenue Tower
                                              65 East 55th Street
                                              New York, New York 10022
                                              (212) 451-2300

558849-3