```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
PORTSIDE GROWTH AND OPPORTUNITY FUND,

                    Plaintiff,
                                            MEMORANDUM AND ORDER
         - against -
                                            07 Civ. 6990 (NRB)
GIGABEAM CORPORATION, INC.,

                    Defendant.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Portside Growth and Opportunity Fund ("Portside") brought this action alleging that Gigabeam Corporation, Inc. ("Gigabeam") breached an agreement to redeem its convertible preferred stock for cash or an equivalent value of common stock. Before this court is Portside's pre-answer motion for summary judgment pursuant to Fed. R. Civ. P. 56(a)(1), (c) on the issues of liability, damages, and other equitable relief sought in the complaint.[1] For the reasons stated herein, Portside's motion is granted in part and denied in part.

---

[1] See, e.g., Stein v. Oshinsky, 348 F.2d 999 (2d Cir. 1965), cert. denied, 382 U.S. 957 (discussing Rule 56(a)(1)); McDougall v. Donovan, 552 F. Supp. 1206, 1212 n.22 (D.C. Ill. 1982)(same).

## BACKGROUND[2]

In November, 2005, Gigabeam raised a substantial amount of capital through a private placement of Series B convertible preferred stock (the "preferred stock").[3] The terms of the offering, set forth in the Certificate of Designation of Preferences, Rights and Limitations ("Certificate") and the Registration Rights Agreement ("Registration Agreement"), included a provision granting the preferred holders a qualified right of redemption:

> Upon the occurrence and continuation of a Triggering Event, each Holder shall . . . have the right, exercisable at the sole option of such Holder, to require the Corporation to . . . redeem all of the Preferred Stock then held by such Holder for a redemption price, in shares of Common Stock . . . .[4]

One of the "Triggering Events" concerned the filing and maintenance of Gigabeam's registration statement for the offering:

> if, during the Effectiveness Period, the effectiveness of the Conversion Shares Registration Statement lapses for any reason for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period, or the Holder shall not be permitted to resell the

---

[2] The following facts have been drawn from the Complaint ("Compl."), Defendant's Counter-Statement of Undisputed Material Facts ("Def."), the Declaration of Amy Trombly in Opposition to Plaintiff's Motion for Summary Judgment ("Trombly Decl."), Plaintiff's Statement of Undisputed Material Facts ("Pl."), and Declaration of Jeffrey C. Smith in Support of Plaintiff's Motion for Summary Judgment ("Smith Decl.").

[3] See Smith Decl. ¶¶ 2-5; Def. ¶¶ 3-5.

[4] Smith Decl. Ex. A §§ 6(a), 9(b).

> Registrable Securities under the Conversion Shares Registration Statement for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period . . . .[5]

The term "Effectiveness Period" was defined in Section 2(a) of the Registration Agreement:

> Subject to the terms of this agreement, the Company shall use its best efforts to keep [its] Registration Statement continuously effective under the Securities Act until all Registrable Securities covered by such Registration Statement have been sold or may be sold without volume restrictions pursuant to Rule 144(k) as determined by the counsel to the Company pursuant to a written opinion letter to such effect, addressed and acceptable to the Company's transfer agent and the affected Holders (the "Effectiveness Period").[6]

In June, 2006, Portside purchased 342 shares of Gigabeam preferred stock from Omicron Master Trust, an original investor in the private placement.[7] By letter dated April 25, 2007, Gigabeam informed the preferred holders that the Securities and Exchange Commission ("SEC") had suspended the effectiveness of its registration statement for failure to timely file a 10-KSB annual report for the fiscal year ending December 31, 2006.[8] The April 25, 2007 letter also warned the holders that, as a consequence of the suspension, the prospectus under the registration statement

---

[5] Id. § 9(a)(ii).

[6] Smith Decl. Ex. B § 2(a).

[7] See Smith Decl. Ex. C, D, E, F; Def. ¶ 7.

[8] See id. ¶ 12; Smith Decl. Ex. G.

could "not be used to consummate a sale or trade of any of the 'offered shares' as listed . . . until further written notice."[9] The registration statement remained suspended for at least sixty (60) days.[10]

On July 10, 2007, Portside demanded that Gigabeam redeem its Series B preferred stock in accordance with the valuation method described in the redemption provisions of the Certificate.[11] An amended redemption demand, delivered shortly thereafter, acknowledged a miscalculation of the number of shares of common stock to which Portside was entitled and upwardly revised that figure from 166,532 to 222,043 shares.[12] Gigabeam's refusal to tender any common stock, or an equivalent value of cash, precipitated the instant action.[13]

## DISCUSSION

### A. Legal Standards

A motion for summary judgment must be granted if the pleadings, together with the affidavits, if any, "show that there

---

[9] See id.

[10] See Def. St. ¶ 14; Smith Decl. ¶ 9.

[11] See Def. ¶¶ 15, 16; Smith Decl. Ex. H.

[12] See Def. ¶¶ 17, 18; Smith Decl. Ex. I.

[13] See Def. ¶ 23.

-4-

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all justifiable inferences in favor of that party, eschewing determinations of credibility, weighing of evidence, and other functions properly left to a jury. See Jeffreys v. City of New York, 426 F.3d 549, 553-54 (2d Cir. 2005). The moving party bears the burden of showing that he or she is entitled to summary judgment, and if the nonmoving party does not present evidence from which a reasonable jury could return a favorable verdict, then summary judgment is appropriate. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004).

Gigabeam's liability in the action turns on the interpretation of, and relationship between, various provisions in the Certificate and the Registration Agreement.[14] The Second Circuit has articulated specific summary judgment standards applicable to issues of contract interpretation:

> In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the

---

[14] Under Delaware law, a certificate of designation for preferred shares "is interpreted using standard rules of contract interpretation which require the court to determine from the language of the contract the intent of the parties." Kaiser Aluminum Corp. v. Matheson, 681 A.2d 392, 395 (Del. 1996).

parties sought to accomplish. Where contractual
language is ambiguous and subject to varying
reasonable interpretations, intent becomes an issue
of fact and summary judgment is inappropriate. The
mere assertion of an ambiguity does not suffice to
make an issue of fact. Ambiguity resides in a
writing when - after it is viewed objectively -
more than one meaning may reasonably be ascribed to
the language used. Only where the language is
unambiguous may the district court construe it as a
matter of law and grant summary judgment
accordingly.

Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006)

(quoting Thompson v. Gjivoje, 896 F.2d 716, 721 (2d Cir. 1990)).

### B.  Events Triggering the Right of Redemption

The first aspect of the parties' dispute centers on whether a lapse in the effectiveness of the registration statement for a period of sixty days could constitute a "Triggering Event" under Section 9(a)(ii) of the Certificate:

> if, during the Effectiveness Period, the effectiveness of the Conversion Shares Registration Statement lapses for any reason for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period, <u>or</u> the Holder shall not be permitted to resell the Registrable Securities under the Conversion Shares Registration Statement for more than an aggregate of 60 calendar days (which need not be consecutive days) during any 12 month period . . . .[15]

According to Portside, a sixty-day suspension of the registration statement suffices to trigger the preferred holders' redemption rights. Gigabeam suggests that suspension was not a sufficient

---

[15]  Smith Decl. Ex. A § 9(a)(ii) (emphasis added).

condition of redemption because the balance of the excerpted provision further requires the lapse to have prevented a preferred holder from selling converted shares. In other words, Gigabeam argues that Portside would have to establish not only that the registration statement was suspended for sixty days but also that the effect of a suspension would be the inability to sell "Registrable Securities." Gigabeam's proposed construction is unsupportable.

For Gigabeam to prevail on this argument, either the structure of Section 9(a)(ii) or the context of the contested language must override the ordinary presumption that the term "or" expresses an alternative. See, e.g., Black's Law Dictionary 1990 (6th ed. 1990) (noting that "or" is "[a] 'disjunctive' particle used to express an alternative or to give a choice of one among two or more things"); Webster's Third New International Dictionary 651 (1981); see also United States v. 6109 Grubb Rd., 886 F.2d 618, 626 (3d Cir. 1989) (noting that, in "the ordinary case," the term "or" situated "between two words indicates that each can stand alone"). Here, Gigabeam has not advanced any plausible explanation for why the first and second clauses do not independently trigger the redemption right.[16] While Gigabeam insists that the touchstone of

---

[16] The affidavit of Amy Trombly, Gigabeam's corporate attorney, offers an opinion on the parties' intentions at the time the Certificate and Registration Agreement were drafted. We reject this affidavit for two reasons. First, it is axiomatic that "[u]nless the contract language is ambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity." In re Explorer Pipeline Co., 781 A.2d 705, 713-14 (Del. Ch. 2001); Allied Capital Corp. v. GC-Sun Holdings, LP, 910 A.2d

the redemption right was the inability to sell converted shares and that any other interpretation would be tantamount to granting Portside a "windfall," there is simply no basis to conclude that redemption is a draconian penalty reserved only for situations in which the preferred holders' converted stock is rendered an illiquid asset. Other triggering events under Section 9(a) include, for example, the sustained failure to pay liquidated damages or to file timely registration statements.[17]

### C. The Duration of the Effectiveness Period

The redemption right is triggered only if the registration statement lapses "during the Effectiveness Period," a term defined in Section 2(a) of the Registration Agreement:

> Subject to the terms of this agreement, the Company shall use its best efforts to keep [its]

---

1020, 1030 (Del. Ch. 2006); Meritxell, Ltd. v. Saliva Diagnostic Systems, Inc., No. 96 CV 2759, 1998 WL 40148, at *7 (S.D.N.Y. Feb. 2, 1998). Second, as Portside correctly notes, Trombly has no personal knowledge of the drafting and negotiating processes and thus, her affidavit is simply not probative of the parties' intent. See Sayers v. Rochester Tel Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1096 (2d Cir. 1993).

[17] The result would be no different if, as Gigabeam suggests, the clause following "or" is construed as clarifying the scope of the preceding language rather than expressing an alternative. See, e.g., Webster's Third New International Dictionary 651 (1981) (the term "or" may indicate the "synonymous, equivalent, or substitutive character of two words or phrases"). According to Gigabeam, a triggering event occurs under Section 9(a)(ii) when a preferred holder is prevented from selling converted shares. This interpretation glosses over the phrase "under the Conversion Shares Registration Statement," which makes plain that it would be sufficient if a preferred holder was precluded from relying on the registration statement in furtherance of a sale. At the very least, Section 9(a)(ii) of the Registration Agreement unambiguously embraces the circumstance where the suspension of Gigabeam's registration statement prevents a preferred holder from utilizing the registration statement to effect a sale for a period of at least sixty days. As noted supra, that is precisely what happened in this case.

>Registration Statement continuously effective under the Securities Act until all Registrable Securities . . . may be sold without volume restrictions pursuant to Rule 144(k) as determined by the counsel to the Company pursuant to a written opinion letter to such effect, addressed and acceptable to the Company's transfer agent and the affected Holders (the "Effectiveness Period").[18]

Portside contends that Gigabeam was obligated to maintain the registration statement until such time as all converted shares would become freely tradeable "pursuant to Rule 144(k)," i.e., two years from the offering date. Gigabeam draws the Court's attention to the language "without volume restrictions," arguing that, for Portside, the Effectiveness Period ended on November 7, 2006 (one year after the offering) since it held rights to less than one percent of the common shares outstanding and, therefore, was not subject to the "volume restrictions" of Rule 144(e). Gigabeam's interpretation does not comport with the plain and unambiguous language of Section 2(a) of the Registration Agreement.[19]

We first review several limitations on the sale of restricted securities that are particularly relevant to contextualizing the crucial phrase "may be sold without volume restrictions pursuant to

---

[18] Smith Decl. Ex. B § 2(a).

[19] Gigabeam also suggests that Portside was obligated to seek an opinion of counsel before serving a notice of redemption. This argument fails for two reasons. Section 2(a) does not expressly so provide; rather, an opinion of counsel was required of Gigabeam (and not the preferred holders) if it sought to be relieved of its obligation to maintain the effectiveness of the registration statement. Moreover, it is undisputed that counsel for Gigabeam could not (and indeed, did not) issue an opinion stating that "<u>all</u> Registrable Securities . . . may be sold without volume restrictions pursuant to Rule 144(k)." (emphasis added).

Rule 144(k)." All restricted securities must be held for at least one year prior to any public sale. See 17 C.F.R. § 230.144(d)(1). Following the expiration of this one-year holding period, restricted securities are saleable but only under certain conditions: (i) a notice of sale must be filed with the SEC if the sale involves more than 500 restricted shares or the aggregate dollar amount of the proceeds is greater than $10,000 in any three-month period, see id. § 230.144(h); (ii) the number of shares sold during any three-month period cannot exceed the greater of (a) one-percent of the outstanding shares of the same class being sold, or (b) the average reported weekly trading volume during the four weeks preceding the sale, see id. § 230.144(e);[20] and (iii) sales must be handled as routine trading transactions and neither the seller nor the broker may solicit orders to buy the securities, see id. § 230.144(f). Rule 144(k), the provision referenced in Section 2(a) of the Registration Agreement, exempts all restricted shares held for two years from these notice, volume and manner-of-sale limitations. See id. § 230.144(k).

The fundamental problem with Gigabeam's proposed construction is that it fails to ascribe any meaning to "pursuant to Rule 144(k)." Implicit in Gigabeam's argument is the suggestion that the sale of securities under 144(e)(1) is indistinguishable from that under 144(k) and thus, it would accord with the parties'

---

[20] Therefore, an investor whose holdings represent less than one-percent of the outstanding shares is effectively exempt from the volume restrictions of Rule 144(e).

intent to treat the reference to "144(k)" as a typo. However, we cannot ignore the important distinction, noted <u>supra</u>, that 144(k)-eligible securities are fully alienable whereas 144(e)(1) securities are still subject to notice and manner-of-sale limitations.[21]

Gigabeam's understanding of the agreement is defective for the independent reason that it creates two different effectiveness periods – a one-year period for investors whose holdings do not exceed one percent of the outstanding shares, as set forth in Rule 144(e)(1), and two years for all other investors. This result is contrary to the language requiring a uniform effectiveness period lasting until "<u>all</u> Registrable Securities covered by such Registration Statement . . . may be sold without volume restrictions."[22] By its express terms, the language of Section 2(a)

---

[21] We appreciate that Portside's interpretation tends to render the clause "without volume restrictions" surplusage because Rule 144(k) exempts securities from other types of restrictions as well. However, this approach is certainly preferable to reforming the contract by deleting language that would otherwise circumscribe the meaning of the contested provision in a manner consistent with the balance of the text. See, e.g., <u>Majkowski v. American Imaging Management Services, LLC</u>, 913 A.2d 572, 589 (Del. Ch. 2006) (noting that the technique of interpreting "each word or phrase in a contract to have an independent meaning so as to avoid rendering contractual language mere surplusage . . . is properly used only as a guide in determining the objective intent of the original parties"); <u>Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.</u>, 708 A.2d 989, 992 (Del. 1998) ("[I]t is not the proper role of the court to rewrite . . . provisions to a written agreement."). It is also worth noting that both Rule 144(e)(1) and 144(k) relieve investors of volume restrictions and thus, it would natural for a drafter to specify which provision is being relied upon to define the Effectiveness Period.

[22] Gigabeam essentially concedes this point:

> [I]t is imperative for the Court to understand that the underlying agreements were meant to protect all stockholders (they were not specifically drafted for any one investor, such as Portside). As such, the documents were drafted

does not distinguish or single out investors whose holdings were limited and, therefore, saleable under Rule 144(e) after a one-year holding period.[23]

### D. Damages and Other Equitable Relief

There is no dispute that, at the time Portside requested redemption of its preferred shares, some registrable securities were subject to the volume restrictions of Rule 144(e).[24] It is also undisputed that, for at least the sixty-day period commencing on April 25, 2007, the registration statement was suspended and Portside could not use the statement to consummate a sale of any converted shares.[25] Thus, we hold that: (a) the Effectiveness Period ended on November 7, 2007, two years after the securities

---

    specifically to protect the stockholders that had the most restrictions placed on their resell [sic] of Registrable Securities (i.e. those stockholders that are subject to the confines of the Rule 144 volume limitations) – with the view that if the agreements protect the stockholders with most heightened restrictions, by its very nature, the documents also protect stockholders with lesser restrictions to resell (such as Portside).

Trombly Decl. ¶ 9.

[23] While we believe that the clause "all Registrable Securities" and the reference to Rule 144(k) operate in tandem to compel an interpretation of the Registration Agreement in which all preferred holders receive the benefit of a uniform Effectiveness Period, even if "all Registrable Securities" is best understood to mean all registrable securities of a particular preferred holder, and not all outstanding registrable securities, that interpretation would be equally unavailing. There is no question that Portside's registrable securities had not been relieved of the resale restrictions "pursuant to Rule 144(k)."

[24] See Trombly Decl. ¶ 9.

[25] See Def. St. ¶¶ 12-14.

were issued; and (b) Gigabeam was obliged to redeem Portside's preferred shares in the manner described by the Certificate.

Although Gigabeam's liability has been sufficiently established as a matter of law, we find the factual record inadequate to support Portside's application for an immediate award of damages (including interest), specific performance, liquidated damages under Section 2(b) of the Registration Agreement, and attorney fees. Without further development, we are reluctant to rely on the facts and conclusions submitted by Portside, but not addressed or admitted by Gigabeam. While we recognize that, on a motion for summary judgment, undisputed facts may be deemed admitted, we do not wish to rely on that approach given the posture of Portside's summary judgment motion and the reasonably complex nature of its damages calculation. Specifically, Gigabeam has not addressed any number of relevant facts, including, inter alia: (i) the precise date on which the sixty-day period expired; (ii) the Trigger Redemption Amount;[26] (iii) the number of shares of common stock to which Portside was entitled; (iv) the average weekly trading volume for Gigabeam stock during the four-week period preceding the proposed sale dates; (v) the highest price of Gigabeam stock during the aforementioned period; (vi) the amount of securities sold by Portside during the three-month period preceding the proposed sale dates; and (vii) whether Gigabeam's financial

---

[26] See Def. ¶ 20.

condition would support a grant of specific performance.[27] Accordingly, if Gigabeam determines to challenge Portside's calculation of damages, it is directed to respond to each element of Portside's calculation and specify the basis for any disagreement within twenty (20) days of the date of this opinion.

## CONCLUSION

For the foregoing reasons, Portside's motion for summary judgment pursuant to Fed. R. Civ. P. 56(a)(1), (c) is granted in part and denied in part.

Dated:   New York, New York
         May 19, 2008

                                        _____
                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

---

[27] Since Gigabeam has failed to address any of the legal arguments in the portions of Portside's briefs that address these issues, we have assumed, without deciding, that Portside has correctly stated the legal standards applicable to calculating damages in this action.

-14-

Copies of the foregoing Memorandum & Order have been mailed on this date, May 9, 2008, to the following:

<u>Counsel for Plaintiff</u>:
Thomas J. Flemming
Joshua S. Androphy
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022

<u>Counsel for Defendant</u>:
Richard Roth
Jordan Kamm
Roth Law Firm
545 5th Avenue, Suite 960
New York, NY 10017